Though the testator be 86 years old, if he dictate his will, and the provisions manifest intelligence, sound moral sentiment, & be not procured by duress or other undue influence, it will be sustained.

## Watson *vs* Watson's heirs.

ERROR TO THE MADISON COUNTY COURT.

*Duress.     Undue influence.*

CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

IT seems to the Court that the facts, as proved here, preponderate decidedly in favor of the testamentary capacity of *Joseph Watson,* when he duly published the controverted document as his last will; the vague *opinions* to the contrary, as expressed by some few of the multitude of witnesses, are entitled to but little effect in opposition to *facts* conducing strongly to the conclusion that the venerable testator, though 86 years old and confined to his bed by a local affliction called the *gravel,* had sufficient memory and reason, to enable him to make a prudent disposition of his small estate, according to his own voluntary and well considered purpose.    The single fact, that he dictated the will and that its provisions manifest intelligence and sound moral sentiments, would alone be entitled to great consideration.    An act so rational cannot easily be presumed to have been the offspring of an irrational or incompetent mind.    But this fact is fortified by many other subordinate circumstances.

The assumed unfitness of the bequest of a young stallion to the testator's daughter Sally, should not, under any circumstances, be entitled to the effect, as one witness thought it should be in this case, of proving either incapacity or sinister influence.    But this was his most valuable horse.    By the previous contract, Sally was to

have two cows and the best horse; the will was, therefore, only a confirmation in this respect, of the contract, and of course, this bequest argues capacity rather than the want of it.

Nor is there any sufficient ground for apprehending that the will was procured by duress or extraneous influence, either sinister or controling. It does not appear that either of the devisees ever suggested such a disposition of the testator's estate as that made by this will, or that either of them ever knew, before his death, that he had published such a testament. Their conduct on two or three occasions, may have been somewhat unfilial, and he may possibly have been, in some degree, stimulated thereby to make the contract for his maintenance for the year 1840. But this deduction, if even authorized, would tend to repel rather than to fortify a presumption that, almost immediately after making such a contract, the testator was persuaded by his helpless condition and by threats of desertion, to make a different and far more comprehensive disposition of his estate by will. On the contrary there is some reason for presuming that the will is such as he had long intended to make, and substantially such as the protracted and peculiar services of the two devisees might have entitled them reasonably to expect.

But however this may be, we are not authorized to presume that the will was procured by fraud or duress, in the absence of any one fact tending to show that either of the devisees ever sought or suggested such a testamentary disposition, or even knew, during the testator's life, that it had been made by him.

It is, therefore, considered that the order of the County Court refusing probate in this case, be set aside, and that the controverted document be admitted to record in this Court, as the last will of Joseph Watson, deceased, and the will be certified to the County Court of Madison and be there also recorded, and for further proceedings.

*Breck* for plaintiff; *Turner* for defendants.